JAMES E. BLACK v. JOHN L. BRYAN.

See this case for a comparison of the Common Law and the law of this State regulating marital rights, as to the liability of the husband for necessaries furnished the wife.

If there be any good sense in the rule, that where credit is once given to the wife, the husband will not be liable though the articles be necessary, it is in cases where the wife has a separate income, or separate property of her own, and under her own control.

The important question is, Were the articles necessary for the wife ? If so, the husband is liable, whether credit was given to wife or not, she having no separate income of her own, under her own control.

The liability of the husband for necessaries furnished the wife, is not affected by the fact that she had, without allegation of fault on her part, deserted her husband's house, and was taking measures to procure a separation of the marital relation, of all which plaintiff had notice, and dealt with the wife as if the separation had been then obtained, taking her note for the amount of the debt incurred ; nor by the further fact, taken in connection therewith, that since the necessaries were furnished, the wife had procured a separation and a separate maintenance, amply sufficient for her support and the payment of this demand.

It would seem that the wife would be entitled in many instances to necessaries, (that is, that the husband would be liable for necessaries furnished her,) although the separation may have been by her fault ; as, for instance, where her separate property is under her husband's control, or there is a sufficient amount of common property.

Where the wife is separated from the husband, without fault on her part, his express prohibition to furnish a given article is entitled to little or no weight; in this case the Judge refused to charge the jury that in view of such prohibition they should construe the term " necessaries " strictly ; and the judgment was affirmed.

The only ground urged by defendant, which, under the circumstances, has the semblance of valid defence is, that at the time of the contract, the wife had separate property and means wherewith to pay the claim. If the allegation had been, further, that she had her separate property under her own control, with an income amply sufficient to the supply of her wants, the defence might have been held available, coupled as it was with the allegation that the work was done on the credit of the wife. But the presumption is, that if she had separate property, it was under the control of the husband ; and the defence, as stated, furnished an additional reason why he should be held to the liability.

The necessaries for which a husband is responsible, are such as are suitable to the wife's station in society, and the condition and estate of her husband. In this case, the husband having separate property to the amount of fifty thousand dollars, and there being community property worth fifteen thousand, the verdict against the husband for extracting teeth for the wife, and inserting a set of false teeth, $225, was sustained.

Appeal from Brazoria. Tried below before George Quinan, Esq., appointed by the parties.

Suit by appellee against appellant, for the value of work and labor done, and materials furnished, in extracting and putting in teeth for Sarah, the wife of the defendant : the labor and material were alleged to be reasonably worth $225 ; it was alleged that the same were necessaries for said Sarah ; and it was also alleged that they were done and furnished with the knowledge and consent of the defendant.

The defendant filed his answer, which after a general demurrer, set up in substance : that the plaintiff dealt with said Sarah as a *feme sole ;* that he did the work on the sole credit of said Sarah, and in payment or settlement thereof he took her note ; that before said work was alleged to have been done, the said Sarah had deserted the defendant, and that at said time she was not living with the defendant ; all of which was known to the plaintiff, both before and at the time said

work was alleged to have been done ; that the plaintiff well knew at the time when he did said work for said Sarah, that she was taking measures to procure a separation of the marital relations which existed between her and the defendant, and that he dealt with her in view of said separation, and as if said separation had been obtained ; that said work was unnecessary ; that since said work was done, said Sarah had procured a separation from defendant ; that she now has a separate maintenance, which is amply sufficient for her support, and for the payment of the plaintiff's demand.

Upon exception by the plaintiff, all of this answer was stricken out, except that portion which set up that the work was not necessary.

The plaintiff filed an amended petition, which set up, that at the time the work was done and for a long time previous, the defendant and said Sarah were living together as husband and wife, and that they were legally married ; that at the time the work was done there was in the possession of the defendant, and still is, community property to the value of fifteen thousand dollars, which said community property belongs to the said Sarah and the defendant.

On the same day the defendant filed an amended answer, in which he set up, that the plaintiff traded with, and did the work for, the said Sarah, and that he gave the credit therefor to her alone, and that he took her individual note for the work, and that at said time she had separate property and means to pay said note ; that the plaintiff knew, when and before the work was done, that the defendant disapproved of the same, and had refused to pay for it, and that the defendant was deserted by the said Sarah H. Black.

This answer was excepted to, and the exception sustained by the Court. The defendant then filed a second amendment, in which he set up in the just plea that there was an express contract between the plaintiff and Mrs. Black, to the effect that said Sarah was to pay the said plaintiff for the work al-

leged to have been done, and that it was expressly agreed be-
tween said parties that the plaintiff herein should not look to
the defendant herein for payment for said work, and should be
paid by the said Sarah H. Black out of her separate estate.
The second plea set up that the work was not necessary to the
health of Mrs. Black, and was unwarranted by the manner of
life which the defendant led and his circumstances. The plain-
tiff excepted to the first plea in this amendment, and the excep-
tion was sustained.

The statement of facts was as follows :

The plaintiff introduced witness J. M. McCormic, by whom
he proved the plaintiff did the work, as charged in the peti-
tion, for Mrs. Sarah H. Black, and that said work was reason-
ably worth two hundred and twenty-five dollars, and that Dr.
Bryan was a good dentist and skilled in the science ; that said
work, he believed, was well done, from the satisfaction which
it gave ; that he was not certain whether said work was ne-
cessary to the health of Mrs. Black, or not ; that Mrs. Black's
health had been better since said work was done, but that he
could not say that it was from that cause ; that he had known
people's health to be injured by bad teeth ; that Mrs. Black's
health was bad ; that after the work was done by Mr. Bryan
her health appeared to be better ; that Mrs. Black had seven-
teen teeth extracted ; that Mrs. Black was in the habit of
making bills, and Mr. Black of paying them ; that the defend-
ant Black was worth about fifty thousand dollars, and that, at
the time the work was done, there was a community interest of
at least fifteen thousand dollars, and that plaintiff made for
Mrs. Black a full set of false teeth.

The plaintiff then introduced the witness Peter MacGreal,
by whom he proved that a full set of false teeth was worth
from $220 to $350, and that Dr. Bryan was a skillful dentist.

The defendant introduced W. S. Spencer, by whom he
proved that he had a conversation with the plaintiff, sometime
in the winter or Spring of 1854, before the work was done,

Black  v.  Bryan.

and that the plaintiff requested him to see Capt. Black and get him to agree to pay for the work ; that he told plaintiff that he could not influence Capt. Black about that matter; that the plaintiff then said he would do the work any how ; that Mrs. Black needed the teeth, and that a man never lost any thing by doing a good act, and that he would do the work if he never got paid, and that the plaintiff told witness that he had been referred to witness by Mrs. Black, as she supposed witness could influence defendant to pay for the work.

The Judge charged the jury, without request, as follows :

If you believe that plaintiff did the work for the wife of the defendant, and that it was necessary for her health and comfort, and that his charge is a reasonable one, you will find for the plaintiff.  You must be satisfied from the proof that the work done was necessary for her, and that it was an expense suited to her station in society, and the condition and estate of her husband.

The following instructions were asked by the defendant, and refused :

1st. If the plaintiff herein did the work for the wife of defendant, knowing that the defendant was opposed to the same, the jury should construc the term " necessary" very strictly.

2nd. In construing the term " necessary" the jury should be governed by the manner of life that the defendant has lead and still leads.

3rd. If the jury believe that the plaintiff did the work, knowing that the defendant would refuse to pay for the same, the jury must be satisfied that the work was absolutely necessary for the health and comfort of the wife of defendant.

Verdict and judgment for plaintiff for $225 ; motion for new trial overruled, &c.

There was a bill of exceptions as follows :

The plaintiff offered to prove by a witness, McCormic, that the defendant was in the habit of paying the bills of the said Sarah H. Black, and she in the habit of making them, to which

said testimony the defendant objected, which said objection was overruled by the Court, and that afterwards, on the cross-examination of said witness, the defendant asked said witness " whether he heard a conversation between Mrs. Black and Mr. Bryan to the effect that Mr. Black was not willing to pay for the work, and would not do it unless compelled, and whether this conversation occurred before the work was done ?" which said question, upon exception by the plaintiff, was excluded, and the Court refused to allow said witness to answer the same, to all of which defendant excepts.

*Wharton & Terry*, for appellant.   When it appears that a person, dealing with a married woman, looks to her alone for payment, her husband cannot be made liable, though the debt was contracted for necessaries, and they were living together when the debt was contracted. (Chitty on Contracts, 8th Am. edit. 156 ; Parsons on Contracts, 2nd edit. 288, and also notes, e and f on page 289 ; Bently v. Griffin, 5 Swanston, 356 ; or 1 Eng. Com. R. 131 ; Stammers v. Macomb, 5 Wend. 454 ; Story's Eq. Jur., Sec. 1401, and notes 1 and 2 on pages 874 and 875.)

In the case of Connerat v. Goldsmith, 6 Georgia R. 14, it was held that where the creditor took the note of the wife, it is conclusive that the credit was given to her, and that the husband was not liable.   This was a suit for necessaries which were taken to the house of the husband and used during cohabitation, by the husband and wife ; and the Court further held that a subsequent oral agreement of the husband to pay the debt would be void under the Statute of Frauds.

Having thus shown conclusively that the defence set up is a valid and good one, not only by the most approved English authorities, but by the Common Law as understood and practiced in the United States, it rests with the appellee to show why the rules should not be applicable under the laws regulating marital rights in this State.   This, it is submitted, cannot be

done.   It may be urged as there was a large community prop-
erty, the wife would be entitled to a support out of it.   We
answer that the wife at Common Law is entitled to a support
out of the estate of her husband, which is as sacred  as any
right authorized by our laws.

Now as to the recourse of the appellee.   He could most cer-
tainly have made the separate estate of  the wife liable for  the
note. (Story's Eq. Jur. Vol. 2, Sec. 1401 ; Id. note on pp. 8 74,
877 ;  Hulme v. Tenant, Brown's Chan. R. 14 ; Owens v. Dick-
enson, 18  Eng. Chan. R. 46 ; Butler  v.  Robertson, 11  Tex.
R. 142 ;  Booth v. Cotton, 13 Id. 354.)

In regard to  the  third  assignment, the  Court manifestly
erred ;  he allowed the plaintiff below to  prove by  a witness,
McCormick, that the defendant was in the habit of paying the
debts of his wife ;  and  refused  to  let  same  witness state,  on
cross-examination, that the plaintiff  knew  that the  defendant
would not pay his bill unless he was compelled to do so.

As complained of in the fourth assignment, the Court erred
in refusing the first charge requested by the defendant below ;
for where there is  an express  prohibition  the  term necessaries
should  be  construed  very  strictly.   (Parsons  on  Contracts,
290.)

It is submitted that this case  is  much  stronger  than  any
referred to herein.


*A. P. McCormick*, also, for appellant.


*Munson & Lathrop*, for appellee.   The appellee contends, that
until a separation between husband and  wife by  deed  of separ-
ation, or by divorce, the husband is  liable for necessaries  fur-
nished the wife, under all circumstances, even though the hus-
band forbid the  persons  trusting her  on  his account ;  and, in
support of this, we refer to Parsons on  Contracts, vol. 1 from
page 286 to 303.

We are aware that some of the English authorities say that where the credit is given to the wife, the husband will not be liable although the articles were necessaries.  But we insist that the relation between husband wife, under our Statute, at least so far as property is concerned, is very different from the Common Law.  They each may have separate and distinct in. terests in property.  And where the husband has sole control of the property during his life, and  the  wife may be the real owner of  a large  estate, or may have an  equal interest with him in the same, the husband, according to said Common Law authorities, might restrict her  to  the  barest necessaries, or rather  make  the  person furnishing  her  the  necessaries, the loser thereby.  This question has never been  decided by our Court, but we submit that the true doctrine, under our Statute regulating the marital  rights of  parties, is, to  make the hus-band liable, under  all  circumstances, for  necessaries furnished the wife ;  and that the term necessaries should not be restrict-ed to absolute necessaries, but should be left to the jury to say whether, under all the circumstances, they were necessaries in that particular case.

HEMPHILL, CH. J.   At Common Law the personal existence of a married  woman  is  merged, for  the most part, in that of her husband.  Her disability is almost complete.  Her per-sonal  property, by marriage vests in  the  husband ; and  the right of  disposition of  her real  property, and even taking its fruits, is taken away from her.   " In  general, whatever she " earns during marriage she earns as his servant, and  for  him ; " for, in law, her time and her labor, as well as her money, are " his property."  (1 Parson's on  Contracts, 286.)   And not-withstanding the husband lives  apart  from  his wife, and in a state of continued adultery, his right to her personal property continues, (7  Pick. 75 ;  2 J. J. Marshall, 82,) including  her earnings before and after marriage.  (10 Pick. 429 ; 1 Parsons on Contracts, in notes, p. 286.)

Black v. Bryan.

But even under this system, so hostile to the rights of property in the wife, she may be the agent of the husband, and, in that capacity, make contracts which shall bind him ; and this agency need not be express, but is raised, by law, from a variety of circumstances. As a general rule, whatever she purchases for herself and the family, the husband is liable for, provided they be necessaries : that is, articles suited to her situation and the means of the husband and his condition in life.

This liability results from his implied authority ; but he may be held, by express assent, for articles which are not necessary ; and this assent may be inferred from slight circumstances : as, for instance, where he knows of her possessession and use of the property, without making any objection. It seems to have been a general rule, as laid down by the earlier authorities, that the husband might withhold his authority, and was saved from liability, even for necessaries, by express notice and prohibition : as, for instance, a tradesman, prohibited by a husband from supplying his wife with articles of dress, could not recover against the husband, because, in the language of Lord Hale, "it shall not be left to a "jury to dress my wife in what apparel they think proper." This rule, that the implied authority of a husband may be rebutted by proof of express prohibition, is shown by Parsons, in his able work on contracts, to be incompatible with the later authorities, and as one which should be modified wherever circumstances required such modification ; and he instances the case of a rich and penurious husband, giving his wife garments enough to prevent her from suffering from cold, but of such coarse materials that she could not well wear them in the streets ; or from bad temper refusing her clothing, so that for decency's sake she was obliged to remain in her chamber, and even there suffered from cold. It could not be doubted that in such cases the husband would be held liable, and that his authority would be presumed by law, against his express pro-

hibition, as has been held where the husband turns the wife
out of doors without her fault, and that though according to
the saying of Lord Hale, " the law will not presume so much
" ill as that a husband should not provide for his wife's neces-
" sities ;" yet this being proved, the law will not do so much
ill as to leave her without necessaries.

The author then states that the later authorities seem to
change the ground upon which the liability of the husband for
necessaries furnished the wife has hitherto rested.  This had
generally been put upon her agency and his authority.  This
was sometimes stretched too far.  His authority was presumed
from circumstances which suggested no probability of such
authority, but negatived any such supposition.  The supposi-
tion was not only without fact, but against fact.  It was in
truth a mere fiction of law, in cases where the wife, driven
from the house and presence of the husband with manifesta-
tions of his hatred, incapacitated perhaps by infirmities of
body and mind from making a contract at all, is supplied with
necessaries and the husband held liable for their payment.
For these and other reasons, says the author, the Courts now
show a tendency " to rest the responsibility of the husband,
" for necessaries supplied to the wife, on the duty which grows
" out of the marital relation.  He is her husband ; he is the
" stronger, she the weaker ; all that she has is his ; the act of
" marriage destroys her capacity to pay for a loaf with her
" own money ; and as all she then possesses, and all she may
" afterwards acquire, are his during life and marriage, upon
" him must rest, with equal fulness, if the law would not be
" the absolute opposite of justice, the duty of maintaining her
" and supplying all her wants, according to his ability.  And
" we think this plain rule of common sense and common moral-
" ity is becoming a rule of the Common Law."  (1 Parsons on
Contracts, p. 290, 291.)

I have cited at much length the substance of a portion of
the chapter of this accomplished jurist, on the Contracts of

Married Women, for the reason that it embodies a most accurate and just exposition of the law on that subject, as deduced from authorities entitled to weight and respect.

He has written them since many of the States had abolished the old rules as to the position and property of married women as being unjust, and have made such changes as are in harmony with the advancing condition of society, and have greatly improved the marital relation. He is evidently impressed with the conviction that there was good ground for change, and that the rights of married women should be placed on a more liberal footing, and especially with reference to the point immediately under consideration, that the wife should not be regarded as a mere agent or servant of the husband, but as a partner ; as the weaker vessel indeed, but for that reason the more entitled to comfort and support, according to the means and ability of the husband.

His views are entitled to much respect. and especially as they are supported by late decisions. In Read v. Legard, 4 Law and Eq. 523, the husband was a lunatic, confined in the asylum, and the plaintiff had supplied the wife with necessaries. It was contended by counsel in argument, that the right of the wife to bind the husband was derived from some act, real or supposed, of the husband, done after marriage, and which he must be in a condition to persist in or revoke. Pollock, C. B., said that the defendant was liable ; that the action was founded on this, that the defendant has taken on him a duty ; having contracted marriage with the person sustained by the plaintiff, he has thereby become, in point of law, liable for her maintenance ; and, if he fails to provide for that maintenance, except under certain circumstances which justify him in withholding it, she has authority to pledge his credit to procure it. The Chief Baron seemed to admit that no case had yet arisen in which the precise point was brought before any Court. Alderson. B., in the course of the trial said :  " It is " a monstrous proposition, that a man who drives a woman out

"of doors, who hates, who abominates her, actually gives her
"authority to make contracts for him." Martin, B., said, "My
"brother Alderson has stated the real truth respecting the
"obligation of the defendant, and the principle of his liability,
"namely, that by contracting the relation of marriage, a hus-
"band takes on him the duty of supplying the wife with
"necessaries; and if he does not perform that duty, either
"through his own fault, or in consequence of a misfortune of
"this kind, the wife has, in consequence of that relation, a
"right to provide herself with them, and the husband is res-
"ponsible for them; and although, in the declaration, the
"debt sued on is alleged to be the debt of the husband, con-
"tracted at his request, the truth is that it is the wife who
"contracts the debt, while the husband is responsible for it."

That this is the true ground of the husband's liability for
necessaries for the wife, viz. : his duty, arising from the marri-
age relation itself, to supply her with necessaries, cannot admit
of question. It is comprehensive, embracing all cases where
articles of necessity have been furnished. It requires no legal
fiction for its support. It is consistent with fact, and it is
founded, to some extent, on the great fact that all she posesses,
her time, labor and money, belong to the husband; and if at
Common Law, the true principle of the liability of the husband
arises from his duty under the marriage relation by which he
is vested with the property of the wife, so much the more
strongly is it his duty under the marital relations in this State,
by which he is not vested with the property of the wife, but
has the management and control of that property and its pro-
ceeds, and, so far as they become community gains, has dis-
posing power as master and owner. If bound, at Common
Law, to support the wife out of his own property, the law
having vested the property of the wife in him, he surely should
be compelled, under our laws, to supply the wife from the pro-
ceeds of her own property, or from that of the community, in
which she has an equal interest with himself.

The articles furnished the wife, in this case, were proved to be necessaries. But the husband, who was shown, on the trial, to be worth fifty thousand dollars, and had besides, community property amounting to fifteen thousand dollars, attempts, in his answer and amended answers, to screen himself by various excuses from his obligation. The first is, that the plaintiff dealt with the wife as a *feme sole*, that he did the work on her sole credit, and, in settlement therefor, took her promissory note, and that he did not look to the husband for payment, or consult him in relation to the work. If there be any good sense in the rule, that where credit is once given to the wife, the husband will not be liable though the articles may be necessary, it is in cases where the wife has a separate income, or separate property of her own, and under her own control. In other cases the rule would be quite preposterous. Her notes, obligations or contracts are void. Her money, time and labor are not her own, but her husband's ; and she is wholly under his control ; and it is idle to talk of a tradesman giving credit and expecting payment from a wife who has no property and no will of her own, both being absorbed by the husband, whose duty it is, under the marriage relation, to purchase and pay for these supplies. In Equity, where the husband is the manager of the separate estate of the wife, and, in purchases for the estate, gives his own note, the estate will be liable. In Carter v. Eveleigh and wife, 4 Dess. 19, the husband acting as manager of the separate estate of the wife, had purchased a saw gin for the use of the estate. The estate was held liable, though the husband had given his own note for the gin, and the vendor, believing him the owner of the property, had pursued him to insolvency. In Cartwright v. Hollis, 5 Tex. R. p. 169, in treating of the separate estate of the wife, its management by the husband, and its liability for debts, we said, in substance, that the distinction in some of the cases, exempting the estate from liability because credit is given to the husband and not to the wife, is frivolous and founded on no principle.

The important question is, Were the supplies for the benefit of the estate ? If so, the estate is liable. This principle is applicable to the case in hand : the important question is, Were the articles necessary for the wife ? If so, the husband is liable, whether credit was given to the wife or not, she having no separate income of her own, under her own control.

Nor is there more force in the second ground of defence as pleaded, viz. : that at the time of the work done for the wife, she had deserted the house of defendant, that the plaintiff had knowledge of this fact, and also that the wife was taking measures to procure a separation of the marital relation ; and, in connection with this ground, it may be stated that there is the further allegation that since the work was done, the wife had procured a separation and separate maintenance amply sufficient for her support and the payment of this demand, and that plaintiff dealt with the wife as if the separation had been then obtained.

If the separation had been complete at the time the credit was given, and had the separate maintenance been, as said by defendant, amply sufficient and actually paid, the husband would not have been liable. (1 Parsons on Contracts, p. 301, and cases cited ; 2 Bright, Hus. & Wife, p. 18.)

There is no allegation that the separation or desertion by the wife, was from fault on her part. If not, the husband is liable for supplies furnished prior to the separate allowance. (2 Bright, Hus. & Wife, 10.) This was forcibly put in the remark of Lord Eldon, that where a man turns his wife out of doors, he sends with her credit for her reasonable expenses. (3 Esp. R. 150.) The fact that separate maintenance was afterwards allowed the wife, raises the presumption that the fault was in the husband. The rule that it is the duty of the husband to pay for necessaries for the wife, separated from him without her fault, applies as we see, at Common Law even, where all the property belongs to the husband ; but, under our system, she would be entitled, in many instances, to neces-

saries, although the separation may have been by her fault ; as, for instance, where her separate property is under his control, or there be a sufficient amount of community property.

As to the other grounds, as, for instance, that the plaintiff, when he performed the work, knew that defendant disapproved of it and had refused to pay for the same ; a conclusive answer is, that the work was necessary. According to the language of some of the cases, where the husband is living with the wife and expressly prohibited the purchase of some articles, the word necessaries should be construed strictly. Under such circumstances, the opinion of the husband as to what is necessary is entitled to much weight, and persons trading with the wife should exercise due caution. But his opinion is not conclusive. The wife, in fact, whatever may be the theory and fictions of law, is very frequently the best judge of what is necessary for herself. There are circumstances under which the term necessaries should be construed strictly, but the fact of express prohibition, by the husband, is not of itself sufficient ground for such construction ; as that may be rebutted by evidence of his penuriousness, cruelty, bad temper, &c. The fact of whether necessary or not, should, with the circumstances, be submitted to the jury ; and, for whatever is suitable for the means of the husband and to the station of himself and wife, he should be held liable. (2 Kent, 120.) Where the wife is separated from the husband, without fault on her part, his express prohibition is entitled to little or no weight. He is in fault, and the law will not allow him to stint the wife in the supplies necessary to her health and comfort.

The only ground urged by defendant, which, under the circumstances, has the semblance of valid defence, is, that at the time of the contract, the wife had separate property and means wherewith to pay the claim. If the allegation had been that she had her separate property under her own control, with an income amply sufficient to the supply of her wants, the defence might have been held available, coupled as it was with the

allegation that the work was done on the credit of the wife. But the presumption is, that if she had separate property, it was under the control of the husband, and the defence, as stated, furnished additional reason why he should be held to the liability.

The Court charged the jury, in substance, that if they believed the plaintiff did the work for the wife of the defendant, that it was necessary for her health and comfort, and that his charge was a reasonable one, they would find for the plaintiff; that they must be satisfied that the work done was necessary for the wife, that it was an expense suited to her station in society, and the condition and estate of her husband.

The law of the case, as it arose on the facts in proof, was concisely, justly and accurately expressed in these instructions, and the jury having found in conformity with them, and with the evidence, there is no error in the judgment; and it is ordered to be affirmed.

Judgment affirmed.