CAPITAL GARAGE COMPANY *v.* MAX L. POWELL.

November Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 8, 1925.

*Ejectment—Plaintiff Entitled to Compensation for Pecuniary Damages Resulting from Unlawful Withholding—Nature of Proof of Profits Prevented—Prospective Profits for Jury Where Evidence Affords Foundation for Rational Conclusion—Prospective Profits as Guide for Estimating Plaintiff's Loss—Rule of Evidence to Establish Lost Profits Liberal— Past Profits Admissible to Show Lost Profits, When Not Too Remote—"Rental Value"—Offer of Proof Should Be Specific—Loss of Benefit of One Exception by Insufficient Offer Does Not Affect Other Exceptions Properly Reserved —Evidence of `Business Done by Plaintiff and Net Profits Thereof When Previously Occupying Premises—Remoteness of Evidence for Trial Court—Presumption That Court Exercised Discretion in Admitting Evidence of Net Profits of Business Previously Conducted on Premises—Evidence That Business Was Good Held Admissible—Evidence Justifying Assessment of Actual Damages—Damages in Tort Actions.*

1.  In action of tort by successful plaintiff in ejectment, under G. L. 2122, for damages for wrongfully withholding property, the rule of damages is the one generally governing in tort actions, which has for its foundation the doctrine of compensation for pecuniary loss resulting from the unlawful act, and when rental value alone does not afford such compensation additional recovery may be had, and the wrongdoer must respond for gains prevented as well as for losses sustained, so far as same are sufficiently alleged and proved.

2. In such an action, to warrant recovery of profits of which plaintiff has been deprived, the profits claimed must not be uncertain, speculative, or remote; but such as the proof reasonably shows the plaintiff to have been proximately deprived of by defendant's wrongful act are recoverable.

3. In such an action, prospective profits necessarily depend upon various conditions, which are for the consideration of the jury, to be given such effect as its judgment dictates, and need not be susceptible of calculation with mathematical exactness, if there is sufficient foundation for a rational conclusion.

4. In such action, evidence of prospective profits is received, not as furnishing a measure of damages to be adopted by the jury, but to be taken into consideration by the jury as a guide in arriving at a correct estimate of plaintiff's loss.

5. When lost profits are recoverable, the rule of evidence to establish them is a liberal one.

6. In action of tort by successful plaintiff in ejectment, to recover damages for unlawfully withholding property, where lost profits are recoverable, past profits in the same business may be shown, if not too remote.

7. In addition to the use of term "rental value" in the restricted sense of fair value for use of premises, it has a broader meaning, and when used in the latter sense comprehends all that is included in the term "damages."

8. Where counsel, in response to the court's inquiry as to the purpose for which evidence was offered, said that it was offered for any purpose for which it might be found admissible and on any issue in the case on which it might bear, the evidence was properly rejected, as it was counsel's duty to make a full disclosure of the claimed relevancy and materiality of the evidence, so that ruling on its admissibility might be understandingly made by the court.

9. Although party may lose the benefit of one exception by failure of his counsel to specifically state the purpose for which evidence is offered, the rule requiring such disclosure being for the protection of the court and not to punish counsel, other exceptions along the same line, properly reserved, may be made the basis of error, where court excluded such offers with a full understanding of the party's claim.

10. In action of tort by successful party in ejectment, for damages

for unlawfully withholding garage property, evidence regarding garage business done on premises by occupant thereof during plaintiff's exclusion therefrom, *held* admissible, and its exclusion prejudicial error.

11. In such action, evidence of net earnings during previous occupancy of premises by plaintiff, if not referring to a time too remote, was admissible, and question of remoteness was addressed to trial court's discretion.

12. In such action, ruling of trial court admitting evidence of net profits during previous occupancy of premises by plaintiff will be presumed to have been made in the exercise of its discretion, the contrary not appearing.

13. In such action, evidence of one who had worked in the garage during plaintiff's previous occupancy thereof that business was good was admissible as tending to show the amount of mesne profits which defendant received or ought to have received.

14. In action of tort by successful plaintiff in ejectment, for damages for unlawfully withholding garage property, evidence as to building, equipment, location, and former patronage, *held* to justify assessment of actual damages, making erroneous trial court's ruling to the contrary and the directing of verdict for nominal damages only.

15. In tort actions, damages are necessarily a matter of judgment, to be estimated from facts and circumstances; and in such cases, substantial damages may be awarded though there is no evidence specifically directed to their amount.

ACTION OF TORT by successful plaintiff in ejectment for damages for wrongfully withholding property. Plea, general issue. Trial by jury at the September Term, 1924, Washington County, *Willcox*, J., presiding. Verdict for nominal damages directed by court, and judgment on verdict. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*H. C. Shurtleff* for the plaintiff.

*Max L. Powell* and *John W. Gordon* for the defendant.

POWERS, J. This is a tort action supplemental to the ejectment suit between the same parties (*Capital Garage Co.* v.

*Powell,* 97 Vt. 204, 122 Atl. 423), and is brought to recover
the damages occasioned by being deprived of the use and oc-
cupation of the garage in question from November 22, 1922, to
October 18, 1923, during which time it was admitted that the
plaintiff was wrongfully excluded by the defendant. The actual
occupant of the premises during this time was Leo Johnson,
who carried on therein a car-selling and garage business. He
was called as a witness, and testified that the amount of garage
business done there during the time in question would appear
from his books. His bookkeeper was then improved as a witness,
and asked to give from the books the amount of business "that
was transacted in the garage end of that business" month by
month during the period named. Upon objection being made,
the plaintiff explained that the evidence was offered on the
question of damages. An unnecessarily long and tedious dis-
cussion followed regarding the measure of damages in such
cases and the evidence admissible to establish the same, during
which other questions were asked, discussed, and excluded.
Throughout this discussion, the plaintiff insisted that it was
entitled to recover all it had lost by reason of being kept out
of the possession of the garage, including the profits it could
have made there; and that, to establish this loss, it had a right
to show the business done and profits made by Johnson during
that time, not as the measure of its recovery, but as circum-
stances to guide the jury in estimating its loss. The defendant
vigorously disputed this claim, and insisted that the plaintiff's
recovery was limited to the rental value of the premises as
determined by its location, adaptability to the business, and the
other circumstances. The result of it all was that the court
accepted the defendant's view of the question, excluded the
offered evidence, and the plaintiff excepted.

At common law, a successful plaintiff in ejectment
recovered the demanded premises, but with nominal damages,
only. He could then bring an action of trespass for mesne
profits, in which he recovered such damages as the law gave
him. Our statute, G. L. 2122, changed this procedure and
blended the latter action with the former. *Brinsmaid* v. *Mayo,*
9 Vt. 31.

Mesne profits were the pecuniary gains and benefits received
by the disseizor during his unlawful occupancy. R. & L. Law
Dict.; 19 C. J. 1233. These, computed with equitable allowances

for taxes and other necessary expenses paid, were awarded
to the plaintiff. Ordinarily, the mesne profits were determined
by the rental value; and this was enough to reimburse the plain-
tiff for his loss. But it was not always so; in proper cases,
special damages, if alleged, were recoverable. Newell, Eject.
608; Adams, Eject. 459; *Goodale* v. *Tombs,* 3 Wils. 118. While
the statute above referred to speaks of the recovery of
"damages," the term "mesne profits" persists in the cases,
and is commonly used to denote the damages recoverable in
ejectment.

[1-4] It is to be admitted that some confusion is found
in the modern cases on the subject under discussion, but the
rule to be deduced therefrom is neither difficult nor peculiar.
The action sounds in tort, and the rule of damages is the one
generally governing in tort actions. It has for its very founda-
tion, the doctrine of compensation for the pecuniary loss result-
ing from the unlawful act. Newell, Eject. 609; *Morrison* v.
*Robinson,* 31 Pa. 456. To limit one whose property has been
*wrongfully* withheld from him to a less sum than this, would
be manifestly unfair. So the law says to one who wrongfully
obtrudes himself into a possession that belongs to another, "you
shall make good to the disseizee the loss resulting therefrom."
This may be measured by the rental value of the premises, or
it may be more. When the rental value, alone, compensates
the plaintiff, it governs the award of damages; when that value
falls short of such compensation, it does not. As a general rule,
the rental value will afford compensation, but the disseizee is
entitled to *all* he has lost, be the same more or less than the
rental value. *Yuen Suey* v. *Fleshman,* 65 Ore. 606, 133 Pac.
803, Ann. Cas. 1915A, 1072. "Ordinarily," says the court in
*Trotter* v. *Stayton,* 45 Ore. 301, 77 Pac. 395, "the measure of
damages is the fair value of the use of the premises during the
occupancy of the defendant; but the plaintiff is not confined
alone to such damages. He is entitled to recover all damages
which he may suffer, fairly resulting from the wrong complained
of, if specially pleaded." The Massachusetts court in *Hodgkins*
v. *Price,* 141 Mass. 162, 5 N. E. 502, adopts the same rule in the
following language: "In an action like this the rule of dam-
ages should have as its basis compensation to the plaintiff for
the injury he has sustained. The measure of damages should
be, as in an action of trespass for mesne profits, a sum which,

upon just and equitable principles, will furnish such compensation or indemnity. The plaintiff should be placed in as good a position as he would have been in if the defendants had not dispossessed him." Our own holdings are in harmony with the foregoing.

It was said in *Lippett* v. *Kelley*, 46 Vt. 516, that the general rule in an action for mesne profits is that the plaintiff may recover the annual value of the land from the time of the accruing of his title. But this is not to be taken as excluding special damages if required to make the plaintiff whole. This is sufficiently shown by the fact that the Court in referring to the English rule, quotes from *Goodale* v. *Tombs, supra,* the language of Gould, J., as follows: "I have known four times the value of the mesne profits given by a jury in this sort of action of trespass; if it were not to be so, sometimes complete justice could not be done to the party injured." Again, in *Roach* v. *Hefferman,* 65 Vt. 485, 27 Atl. 71, a controversy over a slate quarry, the Court found that if the defendant had surrendered the premises, the plaintiff could reasonably have realized a profit of one hundred dollars for the use thereof, and awarded judgment for that sum. This Court, indorsing the rule as above stated, affirmed the judgment. It is apparent that the Court must have concluded that the use of the quarry was worth what the owner could have made by operating it. In *Powers et al., Exrs.* v. *Trustees Cal. County Grammar School,* 93 Vt. 220, 106 Atl. 836, this Court again recognized the rule that the rental value is not always the full measure of damages, by saying that the mesne profits may sometimes be ascertained by proving the profits actually received, and holding that, a plaintiff may "recover not only the profits that might have been made from the use of the premises recovered, but also such consequential damages as have resulted from the acts of the defendant while in the wrongful occupation of the premises." One of the cases therein cited and relied upon is *Worthington* v. *Hiss,* 70 Md. 172, 16 Atl. 534, 17 Atl. 1026, wherein it is held: "It is well settled that in an action to recover mesne profits, the plaintiff must show in the best way he can what the profits are, and there are two modes of doing so, to either of which he may resort. He may either prove the profits actually received, or the annual rental value of the land"— which is just what the court said in *Nathan* v. *Dierssen,* 164

Cal. 607, 130 Pac. 12. And, finally, in this very litigation, *Capital Garage Co.* v. *Powell,* 97 Vt. 204, 122 Atl. 423, we recognized and indirectly approved the rule contended for by the plaintiff in passing upon the sufficiency of the allegations of the complaint to cover special damages. Compensation being the basis of the recovery in these actions, the wrongdoer must respond for gains prevented as well as for losses sustained, so far as the same are sufficiently alleged and proved. The question involved is not so much the right to recover these, as the sufficiency of the proof. The profits claimed must not be uncertain, speculative, or remote. But such as the proof reasonably shows that the plaintiff has been proximately deprived of by the defendant's wrongful act are recoverable. Prospective profits, to be sure, necessarily depend upon various conditions; but these are for the consideration of the jury, and are to be given such effect as the judgment of the jury dictates. *Allison* v. *Chandler,* 11 Mich 542. They cannot be proved with exactness; but this, too, is for the consideration of the jury. "They need not be susceptible of calculation with mathematical exactness," says Chief Justice Rugg in *Lowrie* v. *Castle,* 235 Mass. 37, 113 N. E. 206, "provided there is a sufficient foundation for a rational conclusion." Evidence of such profits is received, not as furnishing "a measure of damages to be adopted by the jury, but to be taken into consideration by the jury to guide them" in arriving at a correct estimate of the plaintiff's loss. *East Jersey Water Co.* v. *Bigelow,* 60 N. J. Law, 201, 38 Atl. 631; *Peshine* v. *Shepperson,* 17 Grat. (Va.) 472, 94 A. D. 468. The rule is familiar to this Court. Thus in *Chamberlin* v. *Scott,* 33 Vt. 80, it was said that one who is prevented from completing his contract by the act of the other party, may sue on the contract and recover the profit he would have made if he had been allowed to finish it. In *Morey* v. *King,* 49 Vt. 304, the plaintiff who was wrongfully prevented by the defendant from performing his contract, was allowed to recover his lost profit. In *Viles* v. *Barre & Montpelier Tr. & P. Co.,* 79 Vt. 311, 65 Atl. 104, it was held that the defendant was entitled to show in recoupment its loss of patronage and earnings resulting from the plaintiff's failure to perform his contract. And in *Gibson* v. *Wheldon,* 82 Vt. 175, 72 Atl. 909, the plaintiff was allowed to recover the profit she would have made by performing the contract broken by the defendant. And this was the holding in *Auer & Twitchell*

v. *Robertson Paper Co.,* 94 Vt. 473, 111 Atl. 570. These are all contract · cases, but the rule applies in actions of tort. 17 C. J. 794; *Beck* v. *West,* 87 Ala. 213, 6 So. 70.

[5-7]  When lost profits are recoverable, the rule of evidence to establish them is a liberal one. *Church* v. *Wilkeson-Tripp Co.,* 58 Wash. 262, 108 Pac. 596, 109 Pac. 113, 137 A. S. R. 1059. Past profits in the same business, if not too remote, may be shown. *Allison* v. *Chandler, supra; Simmons* v. *Brown,* 5 R. I. 299, 73 A. D. 66; *Collins* v. *Lavelle,* 19 R. I. 45, 31 Atl. 434; *Society* v. *Harwood,* 126 Ind. 442, 26 N. E. 182, 10 L. R. A. 532; *New Jersey Express Co.* v. *Nichols,* 33 N. J. Law, 434, 97 A. D. 722; *Maguire* v. *Kiesel,* 86 Conn. 453, 85 Atl. 689; *Willis* v. *Perry,* 92 Iowa, 297, 60 N. W. 727, 26 L. R. A. 124; *Jacobs* v. *Cromwell,* 216 Mass. 182, 103 N. E. 383, as was said in *Collins* v. *Lavelle, supra,* in speaking of evidence of past profits, "this affords some reasonable basis to reckon from, as, in case of an established business, it is reasonable to presume that, if pursued in the same manner, it will continue to yield a live profit." The question under discussion frequently arises in cases where a landlord wrongfully evicts his tenant. In such cases, the tenant may show the profits of the business wrongfully interrupted as an element of his recovery. *Kostopolis* v. *Pezzetti,* 207 Mass. 277, 93 N. E. 571, Ann. Cas. 1912A, 859, and note; *Pappas* v. *Stark,* 123 Minn. 81, 142 N. W. 1046; *Brown* v. *Linn Woolen Co.,* 114 Me. 266, 95 Atl. 1037.

Thus far, in speaking of "rental value," we have used the term in the restricted sense which the defendant and many of the cases ascribe to it. There is, however, a broader sense in which the term is used; in the latter use it comprehends all that is included in the term "damages." Thus in *Willis* v. *Perry, supra,* the court was considering the "rental value" of the premises involved. "Doubtless, in such a case," says the court, "the rental value of the bathhouse for the time plaintiff was deprived of its use by defendant's acts, would be the measure of her damages. But how is rental value to be shown in such a case, if not from the character and extent of the use of the building? * * * It was said by Seevers, J., in *Gibson* v. *Fischer, supra* [68 Iowa 31]: ' Besides this, the rental value must depend on and be measured by the extent of the profits.' * * * Rental value is of necessity dependent upon what can be made out of the business or property for the uses for which it is

devoted or adapted." And in *Brown* v. *Linn Woolen Co., supra,* it is said: "The ordinary rule of damages upon an eviction is the difference between the rental value of the premises for the term and the rent reserved. Wherever they are appropriately declared for, the profits of a business established upon the leased premises during the period within the term of the eviction may be recovered. And evidence of past profits is admissible in determining such future lost profits."

[7-13] But the defendant insists that the plaintiff's conduct at the trial below deprives it of the benefit of this exception. It is true that during discussions like the one already referred to, the plaintiff was not, at all times, wholly frank in its answers to questions asked by the court regarding the bearing of some of its offers. Thus, on one of the offers to show the amount of business done at this garage in a preceding year, the court asked if this was offered for any different purpose than when originally offered, and counsel replied, "We offer it for any purpose which we may find it admissible for; any issue which it may bear on that is in the case." Such an offer is properly rejected. Such lack of frankness vitiates the offer and renders unavailing any exception to its exclusion. When the court asks counsel to point out the relevancy and materiality of the evidence he offers, it is the latter's duty to make a full disclosure of his claim. He is bound to assist the court to an adequate appreciation of the bearing of the offered evidence, to the end that the ruling on its admissibility may be understandingly made. *Grapes* v. *Willoughby,* 93 Vt. 458, 108 Atl. 421. The language of Judge Haselton in *Re Bean's Will,* 85 Vt. 464, 82 Atl. 740, is pertinent here: "* * * The conference between the lawyer at the bar and the lawyer on the bench * * * ought to be frank and unreserved to the end * * * that no questions may be brought to this Court except those upon which the county court has had a fair opportunity to pass judgment." But the enforcement of the rule under discussion is to protect the court and not to punish counsel for disregarding it; and although this particular exception is lost to the plaintiff, others along the same line were properly reserved, for the ruling excluding the offer was finally made with a full understanding of the plaintiff's claim. The evidence regarding the garage business done by Johnson during the period of the plaintiff's exclusion from the possession should have been admitted, and its exclusion was

prejudicial error. The witness Dillon was asked to give the net earnings of the garage during the years the plaintiff occupied it under his management. This was excluded and the plaintiff excepted. Though the transcript shows that in the question referred to the word "year" and not "years" was used, the discussion shows that both counsel and court understood that the question referred to the whole term of the plaintiff's occupancy, which was said to be some 15 years ending in 1919. While evidence of the net profits of previous years was admissible, such evidence must refer to a time not too remote. The question of remoteness is usually addressed to the trial court's discretion. *Belka* v. *Allen*, 82 Vt. 456, 74 Atl. 91; *McAllister* v. *Benjamin*, 96 Vt. 475, 121 Atl. 263. In view of the range of the question as understood and ruled upon, it was so here, and the contrary not appearing, we assume that it was so disposed of. *Ranney* v. *St. J. & L. C. R. Co.*, 67 Vt. 594, 32 Atl. 810; *Murray* v. *Nelson*, 97 Vt. 101, 122 Atl. 519; *Parkhurst* v. *Healy's Estate*, 97 Vt. 295, 122 Atl. 895. This exception is unavailing. It appeared that Dillon worked in this garage during the very time here in question. The plaintiff offered to show by him that during this time the business there was good, that the tourist business was good, and that the winter storage business was good. These offers were excluded and the defendant excepted. The evidence was admissible. It did not, standing alone, afford a very satisfactory basis for an estimate of damages, to be sure, but was not wholly valueless as evidence tending to show the amount of mesne profits which the defendant received or ought to have received.

[14-15] The court ruled that there was no evidence of actual damages, and ordered a verdict for the plaintiff for nominal damages, only. The plaintiff excepted.

There was evidence that the building in question was a large, three-story, fireproof building, specially arranged and equipped for a garage business. It was steam heated and equipped with electric lights and power. It had an elevator, a gas pump, a machine shop, a washstand with hot and cold water, a paint shop and varnish room. It was connected with the principal hotel in the city of Montpelier, which is on a main tourist route to the White Mountains. It had a commodious battery room capable of handling 500 batteries; two floors were available for storage; and when formerly occupied by the plain-

tiff had actually had the patronage of 65 cars for winter storage, and had business enough to employ from 20 to 25 men in the summer and about 12 in the dull season. With this evidence in the record, it cannot be said that there was no evidence of actual damages. To be sure there were no definite figures before the jury; but that was not necessary. In tort actions, damages are necessarily a matter of judgment, largely; they are to be estimated from facts and circumstances, in many cases; and in such cases, substantial damages may be awarded though there is no evidence specifically directed to their amount. *Smith* v. *Brown,* 164 Mass. 584, 42 N. E. 101; *Baltimore & Ohio R. R. Co.* v. *Boyd,* 67 Md. 32, 10 Atl. 315, 1 A. S. R. 362; *Abromatis* v. *Amos,* 127 Md. 394, 96 Atl. 554; *McDonald* v. *Railroad Co.,* 208 Ill. App. 442; 17 C. J. 724.

*Reversed and remanded.*